UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TINGYAO YAN, ET AL., individually and as representatives of the ESTATE OF YAN YANG | § § § § | |
| v. | § § | CIVIL NO. 4:20-CV-793-SDJ |
| US AVIATION GROUP, LLC d/b/a US AVIATION ACADEMY, ET AL. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand this removed action to state court. (Dkt. #6). Defendants have responded in opposition, (Dkt. #8), and Plaintiffs have replied in support, (Dkt. #9). Having considered the motion, the subsequent briefing, and the relevant law, the Court concludes that the motion should be **GRANTED**.

### I. BACKGROUND

Defendant US Aviation Group, LLC ("USAG") is a civilian flight school based in Denton, Texas. USAG enrolls both domestic and international students, including a significant number of students from China. In 2018, Yan Yang ("Yan"), a person of Chinese national origin, enrolled at USAG. According to Plaintiffs Tingyao Yan and Suangai Yang—Yan's parents—the staff at USAG regularly bullied, abused, and humiliated the school's Chinese students, including Yan. Plaintiffs also allege that USAG enacted and enforced harsh, discriminatory policies, which applied only to Chinese students. Before Yan could complete his flight training, and, Plaintiffs

1

contend, as a result of the school's abuses and discriminatory policies, Yan took his own life.

Specifically, Plaintiffs allege that USAG "has endorsed policies and behaviors that encourage openly targeting, bullying, discriminating against and abusing Chinese students." (Dkt. #2 at 5). For instance, Plaintiffs allege that Chinese students at USAG are required to follow a "Handbook for Chinese Students," which "is targeted only at Chinese students" and which "provides for harassment, monetary penalties and immediate expulsion should there be any perceived violation." (Dkt. #2 at 6). Plaintiffs allege that "[t]he Handbook contains numerous discriminatory provisions which forbid Chinese students from engaging in such innocuous acts as speaking their native language, using any form of transportation (e.g. car, rideshare or public transportation) or engaging in any extracurricular activities." (Dkt. #2 at 6). Plaintiffs further allege that "[w]hile non-Chinese students are encouraged to leave campus and to explore the Dallas-Fort Worth metroplex, Chinese students are confined to their apartments and forbidden to travel to any location other than campus." (Dkt. #2 at 6). In addition, Plaintiffs allege that "only Chinese students are required by USAG staff to perform demoralizing tasks unrelated to aviation training [such as] spending entire days holding doors open for staff and other students and cleaning floors, planes and bathrooms." (Dkt. #2 at 6).

Plaintiffs also assert that USAG "constantly subjects Chinese students to 'Review Boards', which are typically only conducted for serious infractions committed by students (e.g. cheating, violating school policy, repeated failing of exams), [and]

which may lead to immediate termination from the Academy." (Dkt. #2 at 7).[1] "For Chinese students," Plaintiffs allege, USAG uses the review boards as a means to "inaccurately portray that a Chinese student is 'struggling' while at the same time, noting non-specific, subjective reasons for the struggles, such as a lack of talent, lack of motivation or lack of progress in the classroom." (Dkt. #2 at 7). Plaintiffs allege further that USAG requires its "Chinese students to handwrite letters to the student's family, falsely detailing the Chinese student's shortcomings at USAG while apologizing for their dishonor and/or imminent financial ruin." (Dkt. #2 at 7).

Plaintiffs allege that Yan was subject to these abuses and discriminatory policies. They also allege that Yan's mentor, another USAG student named Jianghao Liu, "informed the school that the Review Boards on Yan were inaccurate and misrepresented his performance" and that "Yan performed comparably or even better than his peers in most of his lessons." (Dkt. #2 at 9). Plaintiffs allege that Yan confided in Liu that USAG's actions "had caused him to suffer from depression," which Liu then relayed to USAG. However, according to Plaintiffs, USAG informed Liu "that they 'did not care about Yan's feelings'" and ignored Liu's concerns. (Dkt. #2 at 9). Plaintiffs allege that Yan was given one final review board, at which USAG allegedly misrepresented that Yan was continuing to struggle in his training. (Dkt. #2 at 9). Shortly thereafter, Yan was found dead in his apartment, having committed suicide. Plaintiffs allege that, making "this experience even more horrific for Yan's

---

[1] According to Plaintiffs, Yan's review boards "were conducted and authored by" Defendant Daniel Bryson. For purposes of this order, the Court will refer to USAG and Bryson together as "USAG."

family, the school delayed notifying Yan's family of his death, waiting eight (8) days before notifying Plaintiffs their only child had died." (Dkt. #2 at 10).

Plaintiffs further allege that USAG attempted to conceal its misconduct by expediting Liu's training with the intent of having Liu, a key witness, return to China "before Plaintiffs could have an opportunity to obtain his oral testimony." (Dkt. #2 at 10). Specifically, Plaintiffs allege that:

> According to Liu, once Plaintiffs made it known they were seeking Liu's deposition testimony, USAG went so far as to have a special instructor from a sister campus in Sherman, Texas, travel to Denton to ensure there were no delays in Liu completing his flights and so that he would be returned to China right away and before Plaintiffs could obtain his deposition.

(Dkt. #2 at 10). This special instructor allegedly "informed Liu that he was specifically instructed by USAG to come to the Denton campus where Liu was located because 'sending [Liu] back to China as soon as possible was a top priority for the school.'" (Dkt. #2 at 10–11) (brackets in original).

Plaintiffs go on to contend that they asked the state court to authorize a pre-suit deposition of Liu. According to Plaintiffs, prior to the hearing on their pre-suit deposition request, USAG represented to Liu that he would not be sent home before January 25, 2019, but on the date of the hearing, Plaintiffs' contend that USAG's Vice President of Flight Operations called Liu to tell him that USAG was now "hoping to get [Liu] home in time for Christmas." (Dkt. #2 at 11). On December 16, 2019, the state court granted Plaintiffs' request for a pre-suit deposition. Then, on December 20, 2019, Plaintiffs' counsel noticed Liu's deposition for January 24, 2020, and subpoenaed his attendance. Plaintiffs allege that, despite the notice of deposition,

the subpoena, and the court order, on the evening of December 25, 2019, USAG

notified Liu "that they would be returning him to China at approximately 2:00 a.m.

the following morning." (Dkt. #2 at 11). Plaintiffs allege that, when Liu informed

USAG of the upcoming deposition, USAG responded falsely via text message that

"the school hasn't been issued anything from the county or state stating that you need

to stay for this so you will have to leave this morning." (Dkt. #2 at 11). Plaintiffs allege

that USAG "then immediately transported Liu to the airport, checked in Liu's bags,

and waited by the security area to ensure that he boarded his flight to China."

(Dkt. #2 at 12).

Based on these facts, Plaintiffs brought this lawsuit before the 158th District

Court of Texas in Denton County, (Dkt. #1-3, #1-4), both individually and on behalf

of the estate of their deceased son, claiming that USAG's actions give rise to several

causes of action under Texas law: intentional infliction of emotional distress, gross

negligence, negligence, and wrongful death. (Dkt. #2 at 13–15). Plaintiffs seek at least

$1 million in damages. USAG removed the lawsuit to this Court, asserting that each

of Plaintiffs' claims presents a substantial federal question and thus that the Court

has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1441. (Dkt. #1).[2]

Specifically, USAG contends that each of the complained-of acts were committed in

---

[2] USAG has not asserted that this Court has diversity jurisdiction under 28 U.S.C.
§ 1332, and the parties do not address the issue in their briefing. USAG, the removing party,
bears the burden of showing that the Court has jurisdiction over the case, and whether
diversity jurisdiction exists turns solely on the allegations in USAG's notice of removal. Here,
because USAG's notice of removal, including its attached documentation, fails to provide any
information or allegations supporting diversity jurisdiction, such as the citizenship of the
parties, USAG has not shown that diversity jurisdiction exists in this case.

furtherance of USAG's purpose as an aviation academy and thus relate to aviation safety. Because the field of aviation safety is preempted by federal statutes and regulations, USAG argues, the scope and substance of those regulations are the foundation of each of Plaintiffs' claims. Plaintiffs have now moved to remand this action to state court, countering that none of their claims involve any federal regulations and thus do not present a substantial federal question and that federal aviation law does not completely preempt the field of aviation in order to give the Court removal jurisdiction.

## II. LEGAL STANDARD

A federal district court has subject-matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim." *Bank of Am., N.A. v. Horace*, No. 3:13-CV-01317, 2013 WL 1718090, at \*1 (N.D. Tex. Apr. 19, 2013) (citing *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Absent jurisdiction conferred by statute or the Constitution, federal courts have no authority to adjudicate claims and must dismiss an action if subject-matter jurisdiction is lacking. *Home Builders*, 143 F.3d at 1010. In this regard, federal courts have "an independent duty" to determine whether subject-matter jurisdiction exists in each case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). In a removal case, "[a]ny doubts as to the propriety of the removal should be construed strictly in favor of remand." *Horace*, 2013 WL 1718090,

at *2 (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *Id.* (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

## III. DISCUSSION

Whether federal-question jurisdiction exists over a case "must be determined by reference to the 'well pleaded complaint.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (citation omitted). In other words, the complaint itself must "raise issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993). Courts "start with the long-established axiom that a plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is also available." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). "[G]enerally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." *Id.* "A defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow*, 478 U.S. at 808.

When, as here, a complaint sets forth only state-law claims, a federal district court has federal-question jurisdiction only if: "(1) the state law claims necessarily raise a federal issue, or (2) the state law claims are completely preempted by federal law." *Bernhard*, 523 F.3d at 551. Regarding the former, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally

7

approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005); *see also Franchise Tax Bd. v. Constr. Lab'rs Vacation Tr. for S. Cal.*, 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (holding that state-law claims may arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law"). Regarding the latter basis for federal-question jurisdiction, preemption, "federal question jurisdiction exists . . . only if [federal law] *completely* preempts the [plaintiffs'] state law claims." *Bernhard*, 523 F.3d at 553 (emphasis added) (citing *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188–89 (5th Cir. 2001) (per curiam)). Such "complete preemption" exists only where Congress manifests an intent to "completely displace state law." *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683 (5th Cir. 2001). The Fifth Circuit finds such an intent only when a federal statute: "(1) contains a civil enforcement provision, (2) includes a specific grant of federal subject matter jurisdiction, and (3) reflects a 'clear manifestation of congressional intent to make preempted state-law claims removable to federal court." *Id.* at 686 (citation omitted).[3]

However, in analyzing federal-question jurisdiction on the basis of complete preemption, courts "should also refer to the 'artful pleading' doctrine, which is an 'independent corollary' to the well-pleaded complaint rule." *Bernhard*, 523 F.3d at 551 (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S.Ct. 921,

---

[3] The doctrine of complete preemption "is well established, although perhaps poorly named, since ordinary 'defensive' preemption may also be 'complete,' as where Congress 'occupies the field,' thereby blocking state regulation." *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, at 45–46 (1st Cir. 2008).

139 L.Ed.2d 912 (1998)). "Under this principle, even though the plaintiff has artfully avoided any suggestion of a federal issue, removal is not defeated by the plaintiff's pleading skills in hiding the federal question." *Id.* The artful-pleading doctrine applies only where the state law is subject to complete preemption. *Id.* (citing *Terrebonne*, 271 F.3d at 188–89). In other words, when Congress has manifested an intent to completely preempt a field, "[f]ederal question jurisdiction therefore exists . . . [because] there is, in short, no such thing as a state-law claim" in that field. *Id.* (internal quotation marks omitted) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003)); *see also Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, at 45 (1st Cir. 2008) ("Complete preemption is a short-hand for the doctrine that in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim.").

By contrast, when preemption is merely asserted as a defense "that relies on . . . the pre-emptive effect of a federal statute," there is no basis for removal. *Id.* (quoting *Beneficial*, 539 U.S. at 6). In such instances, though, if federal law acts as a complete defense to plaintiffs' claims, such "defensive preemption" can warrant dismissal of plaintiffs' claims. *See, e.g., Frank v. Delta Airlines Inc.*, 314 F.3d 195, 200–01 (5th Cir. 2002) (dismissing state common-law tort claims because federal regulations required defendants' complained-of actions).

With the above principles in mind, the Court concludes: (1) that Plaintiffs' state-law claims do not "necessarily raise a federal issue," (2) that USAG has not cited

9

to any cases supporting the argument that Plaintiffs' claims are completely preempted by federal aviation law, and (3) that, even if the area of aviation safety were completely preempted by federal law, Plaintiffs have not "artfully pleaded" their state-law claims so as to hide any underlying substantive federal questions because their state-law claims do not have anything to do with aviation safety. Moreover, to the extent that USAG asserts that its complained-of actions and policies were required by federal aviation regulations, such assertion is a defense relying on the preemptive effect of those federal regulations and thus is not sufficient to sustain the Court's jurisdiction under 28 U.S.C. § 1331.

## A. Plaintiffs' Claims Do Not Raise a Federal Issue.

First, Plaintiffs' claims of intentional infliction of emotional distress, gross negligence, negligence, and wrongful death do not "necessarily raise a stated federal issue, actually disputed and substantial," *Grable & Sons*, 545 U.S. at 314, nor does the vindication of those state-law claims "necessarily turn on some construction of federal law," *Franchise Tax Bd.*, 463 U.S. at 9. Plaintiffs neither cite to nor implicitly rely on any federal aviation statute or regulation in their Complaint. Plaintiffs' first three causes of action are state common-law tort claims and the fourth is provided by Chapter 71 of the Texas Civil Practice and Remedies Code. Thus, each cause of action is devoid of any direct federal question.

10

**B. USAG Does Not Cite to Any Cases Showing that Congress Has Completely Preempted Aviation Safety for Jurisdictional Purposes.**

Second, with one exception,[4] each of the cases that USAG cites for its proposition that aviation safety has been *completely* preempted by federal law actually dismissed claims on *defensive*-preemption grounds and made no jurisdictional ruling based on complete preemption or any other federal-question basis.[5] The distinction is significant. When Congress has manifested an intent to "occupy the field" and "completely displace state law," removal jurisdiction of state claims related to that field is proper. *Rio Grande*, 276 F.3d 683 (5th Cir. 2001). However, when Congress has not manifested such an intent, federal law does not act to deprive a state court of jurisdiction to hear state-law claims. *See, e.g.*, *Harris*

---

[4] The lone exception, *Lawal v. British Airways, PLC*, 812 F.Supp. 713 (S.D. Tex. 1992), found federal-question jurisdiction based on FAA preemption. However, as Plaintiffs correctly note, the *Lawal* court applied defensive-preemption standards to the question of jurisdiction. The *Lawal* decision preexists the *Rio Grande* and *Elam* decisions from the Fifth Circuit, as well as the *Harris County* decision, *infra* at 10–11, which was decided by the same judge who decided *Lawal* and which correctly follows the standards set forth in *Rio Grande* and *Elam*.

[5] *See* (Dkt. #5–7) (citing *Ventress v. Japan Airlines*, 747 F.3d 716, 722 (9th Cir. 2014) (holding that plaintiff's claims were defensively preempted by federal aviation law for purposes of a 12(c) motion); *U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir. 2010) (holding that federal aviation law defensively preempted a state statute regulating alcohol served on flights and making no jurisdictional determination); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007) (holding that, in a case removed to federal court on diversity-jurisdiction grounds, federal aviation law defensively preempted plaintiffs' state common-law tort claims); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir. 2005) (holding that federal aviation law defensively preempted state failure-to-warn claim in diversity-jurisdiction case); *Witty v. Delta Airlines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004) (holding that federal aviation regulations defensively preempted state requirements for passenger-safety warnings and making no jurisdictional determination); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367–68 (3d Cir. 1999) (concluding that federal aviation law defensively preempted claims of personal injury due to flight turbulence in diversity-jurisdiction case); *French v. Pan Am Express Inc.*, 869 F.2d 1, 5 (1st Cir. 1989) (concluding that federal aviation law defensively preempted pilot's state claims seeking to enjoin airline from requiring plaintiff to submit to drug tests)).

*County v. Union Pac. R.R. Co.*, No. 4:10-CV-4363, 2012 WL 4339075, at \*2 (S.D. Tex. Sept. 20, 2012) (citing *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011)) ("[D]efensive preemption does not create federal jurisdiction . . . . "). Here, none of USAG's cited cases show that aviation safety has been completely preempted by Congress, and the Court is not aware of any such precedent. Thus, complete preemption cannot serve as the basis for removal jurisdiction.[6]

## C. Only USAG's Defense, Not Plaintiffs' Complaint, Arguably Relates to Aviation Safety.

Third, even if the field of aviation safety were completely preempted by federal law, Plaintiffs' claims do not relate to aviation safety. Nor does the Court find that Plaintiffs' claims have been artfully pleaded to avoid the issue of aviation safety. For instance, Plaintiffs' negligence claim states that, among other things, USAG failed to: properly supervise Yan, consider his deteriorating mental state after being put on notice of it, implement reasonable suicide prevention policies, and stop bullying and harassment. (Dkt. #2 at 13). None of these allegations hinges upon an assertion that USAG was ignoring federal aviation-safety regulations. *Cf. Frank*, 314 F.3d at 200–01 (holding that federal aviation-safety regulations preempted an airline mechanic's intentional-infliction-of-emotional-distress and negligence claims based on his being fired for failing to submit to a urine drug test—a *requirement* established

---

[6] To date, the Supreme Court has applied the complete-preemption doctrine in only three contexts: labor contracts, ERISA claims, and usury claims against federally chartered banks. *Fayard*, 533 F.3d at 45–46; *accord Woodard-Hall v. STP Nuclear Operating Co.*, No. 3:20-cv-00037, 2020 WL 4128942, at \*5 (S.D. Tex. July 20, 2020) ("The Supreme Court has construed only three statutes to so preempt their respective fields as to authorize removal of actions seeking relief exclusively under state law.").

by federal aviation-safety regulations). At the very least, this is not a situation in which the issues underpinning the state-law claims have been preempted by federal law to the point that "there is, in short, no such thing as a state-law claim." *Bernhard*, 523 F.3d at 553 (internal quotation marks omitted) (quoting *Beneficial*, 539 U.S. at 11).

Instead, the only purported federal issue arises as a defense to Plaintiffs' claims. Specifically, USAG argues that "what Plaintiffs are going to call 'mistreatment' is really the implementation of academic standards imposed by the [federal aviation regulations] regarding the knowledge, training, and experience a student must demonstrate in order to fly an aircraft." (Dkt. #8 at 9). In short, USAG contends that federal aviation regulations *require* the conduct described in Plaintiffs' complaint. This conduct includes Chinese students' frequent subjection to "review boards," which, at first blush, sounds plausibly related to aviation safety, although Plaintiffs assert that the review boards were used as a punitive tool for Chinese students in a manner not used for non-Chinese students. However, other conduct appears to be even farther removed from anything relating to aviation safety, such as forcing only Chinese students to perform "demoralizing tasks *unrelated to aviation training* [such as] spending entire days holding doors open for staff and other students and cleaning floors, planes and bathrooms." (Dkt. #2 at 6) (emphasis added). Regardless, the dubious assertion that such tasks relate to aviation safety aside, USAG's argument is a *defense* based on federal aviation regulations, not part of Plaintiffs' well-pleaded complaint. As Plaintiffs correctly point out in their reply brief,

(Dkt. #9 at 2), a defense based on federal preemption may serve as a valid ground for dismissal for failure to state a claim, *e.g.*, *Frank*, 314 F.3d at 200–01 (cited by USAG), but it is not a valid ground for depriving Plaintiffs of their choice to litigate their state claims in state court. Rather, when preemption is asserted merely as a defense "that relies on . . . the pre-emptive effect of a federal statute," there is no basis for removal. *Bernhard*, 523 F.3d at 551 (quoting *Beneficial*, 539 U.S. at 6); *accord Elam*, 635 F.3d at 803; *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 553 F.3d 321, 331 (5th Cir. 2008). Thus, the Court concludes that it has no jurisdiction over this action and that the action should be remanded to state court.

## IV. CONCLUSION

For all the foregoing reasons, it is therefore **ORDERED** that Plaintiffs' Motion to Remand is **GRANTED**. It is further **ORDERED** that this matter is hereby **REMANDED** to the 158th Judicial District Court of Denton County, Texas.

The Clerk is instructed to **CLOSE** this civil action.

**So ORDERED and SIGNED this 22nd day of December, 2020.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

14